Christopher Van Gundy - SBN 152359
vangundy@khlaw.com
Arthur S. Garrett III
garrett@khlaw.com
*Pro Hac Vice Application to Be Submitted*
Keller and Heckman, LLP
Three Embarcadero Center, Suite 1420
San Francisco, CA 94111
Telephone: 415-948-2831
Facsimile: 415-948-2808

William E. Gaar
weg@buckley-law.com
*Pro Hac Vice Application To Be Submitted*
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Telephone: 503-620-8900
Facsimile: 503-620-4878

Attorneys for Plaintiff
TOWNSEND FARMS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TOWNSEND FARMS, INC., an Oregon corporation doing business in California,<br><br>Plaintiff,<br><br>vs.<br><br>GÖKNUR GIDA MADDELERI ENERJI IMALAT ITHALAT IHRACAT TICARET ve SANAYI A.Ş., dba GOKNUR FOODSTUFFS IMPORT EXPORT TRADING AND PRODUCTION CO., a Turkish corporation doing business in California, FALLON TRADING CO., INC., a Pennsylvania corporation doing business in California, UNITED JUICE CORP, a New Jersey corporation | Case No. 8:15-cv-00837<br><br>**TOWNSEND FARMS, INC.'S COMPLAINT FOR ECONOMIC LOSS**<br><br>**DEMAND FOR JURY TRIAL** |

doing business in California, and DOES 1 through 100,

Defendants.

COMES NOW, Plaintiff TOWNSEND FARMS, INC. ("Plaintiff" or "TFI"), and brings this Complaint against GÖKNUR GIDA MADDELERI ENERJI IMALAT ITHALAT IHRACAT TICARET ve SANAYI A.Ş., dba GOKNUR FOODSTUFFS IMPORT EXPORT TRADING AND PRODUCTION CO., a Turkish corporation doing business in California ("Göknur"); FALLON TRADING CO., INC., a Pennsylvania corporation doing business in California ("Fallon"); UNITED JUICE CORP, a New Jersey corporation doing business in California ("UJC"); and DOES 1 through 100 (sometimes referenced as "Defendant" individually, or collectively as "Defendants"). Plaintiff demands a jury trial and alleges as follows:

## I.

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendants because each has engaged in substantial, continuous, and systematic contacts with the State of California, purposefully directing their activities towards California, including the placement of their goods into the stream of commerce with the intent and expectation that they would be available for purchase by California consumers. TFI's claims for relief arise out of those activities.

2. This Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a) and (c) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and there is complete diversity between the parties. Plaintiff is a citizen of the State of Oregon only, and no Defendant is a citizen of the State of Oregon.

3. Venue is proper in this District pursuant to 28 U.S. Section 1391(b) because

a substantial part of the events or omissions giving rise to the claims occurred in this District, as more fully explained elsewhere herein. Venue is also proper pursuant to 28 U.S.C. Section 1391(c)(3) because Defendant Göknur is not resident in the United States, and may be sued in any judicial district.

## II.

## THE PARTIES

4. Plaintiff TFI is an Oregon corporation with its principal place of business in Oregon, and manufactures, distributes, and sells a variety of fresh and frozen fruit products throughout the United States, including in California. TFI sold to its customer Costco Wholesale Co., Inc. ("Costco") a product called "Townsend Farms Organic Oxidant Blend," a frozen berry and pomegranate seed ("aril") mix ("Product"). Costco then placed the Product for sale to consumers at its retail stores throughout the western United States, including in California.

5. Plaintiff is informed and believes that Defendant Göknur is a Turkish corporation with its principal place of business in Turkey, and that it conducts business in the United States and, specifically, in California. At all times relevant to this action, as TFI is further informed and believes, Defendant Göknur exported, distributed and/or sold pomegranate arils to Defendant PPI in California. These pomegranate arils, in turn, were sold to TFI and were used in the Product.

6. Plaintiff is informed and believes that Defendant Fallon is a Pennsylvania corporation with its principal place of business in Pennsylvania, and that it conducts business in California. On information and belief, Plaintiff TFI alleges that Fallon imports foodstuffs from Turkey and assists in the distribution of them throughout the United States, including California. TFI further alleges that Fallon facilitated the sale of pomegranate arils used in the Product that is the subject of this action.

7. Plaintiff is informed and believes that Defendant UJC is a New Jersey corporation with its principal place of business in New Jersey, and that it conducts business in California. Plaintiff TFI is further informed and believes that UJC assists

Göknur with the importation of foodstuffs from Turkey into the United States, including California. At all relevant times to this action, TFI is further informed and believes that UJC assisted Göknur with the importation of the pomegranate arils into California, which arils were used in the Product that is the subject of this action. On information and belief, TFI further alleges that UJC is a wholly-owned subsidiary of Göknur, and/or is undercapitalized and its affairs are so dominated by Göknur that justice and equity require the piercing of UJC's corporate veil to Göknur for purposes of liability, damages and enforcement of any judgment because UJC is the alter ego of Göknur.

8. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names DOES 1 to 100. Plaintiff is informed and believes, and thereon alleges, that each fictitious Defendant was in some way responsible for, participated in, was the alter ego of one or more other Defendants, or contributed to matters complained of, and has legal responsibility for those matters. When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 100, Plaintiff will amend this Complaint to state their true names. The allegations of this Complaint may be amended or supplemented if additional investigation or facts so warrant.

## III.

## NATURE OF THE ACTION

9. This is an action to recover economic losses incurred by Plaintiff TFI arising out of a Hepatitis A Virus ("HAV") multistate foodborne outbreak announced by the Centers for Disease Control ("CDC") on May 31, 2013. HAV typically incubates in the human body for 15 to 50 days, and can cause severe gastrointestinal illness or even liver failure. Subsequent investigations by the CDC and the Food & Drug Administration ("FDA") traced this outbreak of HAV to pomegranate arils produced by Defendant Göknur: "the most likely vehicle for the hepatitis A virus appears to be a common shipment of pomegranate seeds from a company in Turkey, Goknur Foodstuffs Import Export Trading."

10. As further determined by the CDC, these pomegranate arils from Göknur were used by TFI to make the Product. Specifically, TFI had agreed on or about September 21, 2012 to purchase these Göknur pomegranate arils for the Product from Purely Pomegranate, Inc., a California corporation ("PPI"), who in turn contracted for the supply of these pomegranate arils from Göknur through intermediaries, UJC and Fallon. Attached as Exhibit A are true and correct copies of: TFI's Purchase Order, with accompanying terms and conditions ("Additional Terms Of Purchase"), and PPI's corresponding Sales Order that references Göknur as the source of the pomegranate arils at issue in this action.

11. PPI accepted all sales terms and the "Additional Terms of Purchase" as reflected in the exchange of the attached sales documents and in PPI's subsequent delivery of the pomegranate arils to TFI over the course of the ensuing months on the terms stated in these documents. Delivery began with TFI's receipt of the first shipment of these pomegranate arils on or about December, 2012. TFI incorporated the pomegranate arils delivered by PPI pursuant to the attached sales documents into the manufacture of the Product.

12. TFI then sold the finished Product to Costco, who then distributed it in its retail stores throughout the United States, including California. TFI first learned of the HAV outbreak on or about May 30, 2013. On June 4, 2013, TFI recalled certain lots of the Product, and expanded that recall on June 28, 2013.

13. To date, CDC has identified 165 cases of illnesses linked to Göknur's pomegranate arils in 10 States, including California, of which cases 69 required hospitalization. The first of several bodily injury lawsuits were filed against TFI, Costco, PPI, Fallon and UJC beginning in June, 2013. Notably, two purported class actions are currently pending before this Court, *Petersen v. Costco Wholesale Co., Inc.,* Case No. SA CV-13-01292-DOC and *Walters v. Costco Wholesale Co., Inc.*, Case No. SA-CV-14-01176-DOC.

14. On April 24, 2015, TFI in both purported class actions filed by means of a

third-party complaint claims for indemnity and related claims for relief against Fallon and Göknur for its (TFI's) bodily injury liability exposure as a defendant in those actions. April 24, 2015 was the deadline set by the Court for these third-party complaint claims. However, these claims did not include the direct economic losses TFI suffered as a result of lost profits, recall costs, and contractual and indemnity liability to its customer, Costco, as more fully set forth herein.

15. Based on investigations to date and on information and belief, these direct economic losses total approximately $7.5 million USD. These losses include $4.0 million USD in direct "first-party" lost profits and recall expenses that TFI has incurred to date, including: costs of transmission, transportation and relocation of TFI Product; overtime paid to TFI employees; hiring additional persons at TFI; TFI employee expenses, including transportation and accommodation; TFI expenses to rent additional warehouse or storage space; disposal of TFI Product; cleaning TFI processing equipment; costs of replacement product (made without the Göknur pomegranate arils), and chemical analysis of TFI Product. Another $3.5 million USD in direct economic losses to TFI include the following monies paid to third-parties, including: payment of "non-litigated" claims; payment to TFI's legal and consulting experts in responding to the HAV outbreak and recall; and payments to Costco. The payments to Costco included: costs of vaccinating Costco members and other Costco customers against HAV, including boosters; reimbursement of expenses that its members and other customers incurred for vaccinations, diagnostic tests, and other medical and out-of-pocket expenses; costs of refunding Costco members the purchase price of the Product; and Costco's labor costs, other internal costs, and other out-of-pocket expenses Costco incurred in administering the recall.

16. All of these first-party and third-party economic losses incurred by TFI were the direct and proximate result of the wrongdoing or omissions by Fallon, UJC and Göknur, as more fully explained elsewhere herein. Most of these economic losses are not covered by any insurance. None of these economic losses are the subject of the third-

party complaints TFI asserted in the bodily injury purported class actions pending before the Court.

17. TFI hereby expressly reserves the right to amend this Complaint to allege additional claims against Fallon, UJC and Göknur that may be assigned to TFI. These claims that may be assigned to TFI involve payments made by insurers in connection with bodily injury lawsuits and claims arising from exposure to the pomegranate arils that were used in the Product.

**FIRST CLAIM FOR RELIEF**

**(Breach of Express Warranty)**

18. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1 through 17 above as though fully set forth herein.

19. On information and belief, TFI alleges that in the sales documents accompanying the pomegranate arils used to make the Product, Goknur and/or UJC and/or Fallon expressly represented and warranted that the goods were merchantable and free from defects and fit for the use for which they are intended, and have been produced, manufactured or performed in compliance with all applicable laws.

20. Defendants breached their express warranties which were provided to TFI and on which TFI reasonably relied by supplying pomegranate arils that were not merchantable and/or fit for the use for which they were intended. Defendants also breached their express warranties by supplying pomegranate arils that were adulterated with a serious pathogen in violation of federal, state and local laws, regulations, and ordinances, including the Federal Food, Drug and Cosmetic Act ("FDCA" or "the Act").

21. Defendants' breach of express warranty has caused TFI injury. As a direct and proximate result of Defendants' breach, TFI has suffered damages and other losses, including, but not limited to, the economic losses specified elsewhere herein.

**SECOND CLAIM FOR RELIEF**

**(Negligence Per Se)**

22. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1

through 21 above as though fully set forth herein.

23. The pomegranate arils used to make the Product were subject to the statutory and regulatory provisions of the FDCA then in effect. The FDCA prohibited the sale and distribution in interstate commerce of an adulterated food within the meaning of the Act. A food is adulterated within the meaning of Section 402 of the Act when, for example, it contains any added poisonous or deleterious substance which may render the food injurious to human health; it consists in whole or in part of any filthy, putrid, or decomposed substance, or is otherwise unfit for food; it has been prepared, packed or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health, to name a few.

24. The pomegranate arils supplied to TFI were adulterated within the meaning of the Act.

25. Defendants' violation of the Act was the proximate cause of the damages and injuries suffered by those who consumed the pomegranate arils supplied by Defendants and used to make the Product.

26. At present, TFI has incurred and will continue to incur costs, expenses, attorney fees and other obligations as a proximate result of Defendants' violations of the statutory and corresponding regulatory provisions of the Act. Such violations constitute per se negligence, entitling TFI to damages and such other relief as may be necessary to make TFI whole.

## THIRD CLAIM FOR RELIEF

**(Negligence)**

27. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1 through 26 above as though fully set forth herein.

28. Defendants owed a duty of care to each successive link in the supply chain of the pomegranate arils used to make the Product, and ultimately therefore to TFI, to provide a product in compliance with all applicable laws and free from adulteration with any pathogens injurious to human health.

29. Defendants breached their duty of care ultimately to TFI by negligently failing to ensure that the pomegranate arils used to make the Product were not tainted with HAV.

30. The foregoing breaches of duty were therefore the proximate cause of damages and injury to TFI as more fully specified herein.

## FOURTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

31. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1 through 30 above as though fully set forth herein.

32. On information and belief, TFI alleges that Defendants, and each of them, negligently represented to each other successively in the supply chain and ultimately to TFI that the pomegranate arils used to make the Product were safe and compliant with all applicable law.

33. At the time Defendants made these negligent misrepresentations, they had no reasonable grounds for believing them to be true.

34. Defendants made these representations with the intention of inducing TFI to rely upon them to purchase the pomegranate arils at issue to TFI's detriment. In reasonable and justifiable reliance on these negligent misrepresentations, TFI in fact purchased the pomegranate arils at issue.

35. As a proximate result of Defendants' negligent misrepresentations, TFI suffered and continues to suffer costs, expenses, attorney fees and other obligations in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Breach of Implied/Equitable Indemnity)

36. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1 through 35 above as though fully set forth herein.

37. TFI has asserted a claim for breach of implied or equitable indemnity against Defendants.

38. Any liability on the part of TFI in connection with the pomegranate arils used to make the Product is because of, and the proximate result of, the primary or active negligence or other wrongdoing by Defendants. Therefore, any liability on the part of TFI in this regard equitably shall be imputed to Defendants on the basis of vicarious, constructive, derivative or secondary liability, and not as the result of any active negligence or other wrongdoing by TFI. If TFI is therefore required to pay any sum as damages or otherwise for economic loss liability arising out of the pomegranate arils used to make the Product, then said liability equitably will be the result of the acts or omissions, whether negligent or otherwise, of Defendants and thus TFI will be entitled to equitable indemnification to the full extent permitted by law. Any economic damages or injuries suffered by third-parties in connection with the pomegranate arils used to make the Product are the direct and proximate result of the negligence or other wrongdoing, whether active or not, on the part of Defendants.

39. If TFI is found and adjudged liable for any economic damages or injuries arising out of the pomegranate arils used to make the Product, which TFI does not admit but pleads for purposes of this Complaint only, then TFI will be exposed to liability and damages in excess of any actual fault which might otherwise have been attributed to TFI in the absence of Defendants' negligence or other wrongdoing, whether active or not. As a direct and proximate result of acts or omissions by Defendants as elsewhere herein alleged, TFI therefore will have been damaged in an amount equal to the excess of the liability and damages which otherwise properly would have been ascribed to TFI in the absence of Defendants' acts or omissions.

40. TFI therefore has been required and will continue to be required to incur costs, expenses, attorney fees and other obligations in defending and satisfying claims asserted against TFI in connection with the pomegranate arils used to make the Product, which costs, expenses, attorney fees and other obligations by principles of equitable indemnity should be borne by Defendants.

///

## SIXTH CLAIM FOR RELIEF

**(Contribution)**

41. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1 through 40 above as though fully set forth herein.

42. In the event that TFI is adjudged to be liable in damages for negligence in connection with the pomegranate arils used to make the Product, then such negligence occurred through the joint, concurrent and/or successive negligence of Defendants, which joint, concurrent and/or successive negligence was a proximate cause of such damages. Thus, TFI is entitled to contribution from Defendants for a portion of any economic damages or other sums TFI would be required to pay that is attributable to the percentage of comparative fault assessed or assessable against Defendants and each of them.

## SEVENTH CLAIM FOR RELIEF

**(Violation of Cal. Bus. & Prof. Code Section 17500)**

43. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1 through 42 above as though fully set forth herein.

44. Section 17500 of the California Business and Professions Code required Defendants not to make or omit to make any representation regarding the pomegranate arils used to make the Product that was false or misleading.

45. Defendants' express and/or implied representations that the pomegranate arils at issue in this action were safe and compliant with all applicable law were false and/or misleading. The true facts were that the pomegranate arils at issue posed a substantial risk to human health.

46. As a proximate result of Defendants' express or implied representations, TFI suffered injury entitling it to restitutionary relief as provided for in Section 17500 and related sections of the California Business and Professions Code.

## EIGHTH CLAIM FOR RELIEF

**(Violation of Cal. Bus. & Prof. Code Section 17200)**

47. Plaintiff TFI hereby repeats, re-alleges, adopts and incorporates paragraphs 1

through 46 above as though fully set forth herein.

48. Defendants sold adulterated pomegranate arils, thereby misrepresenting the nature, quality and characteristics of their product as more fully set forth herein.

49. Defendants' conduct constitutes unfair competition within the meaning of Section 17200 of the California Business and Professions Code in that such acts constituted violations of numerous laws enumerated herein, and otherwise were unfair, unlawful and/or fraudulent. Such acts proximately caused TFI injuries, entitling it to restitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judicial declaration and judgment against them, as follows:

1. For damages, restitution and indemnity for economic injury caused by Defendants;
2. For declaration of rights, duties, and liability as to all parties in this action;
3. For pre- and post-judgment interest to the extent allowed by law;
4. For reasonable attorneys' fees and costs pursuant to applicable statutes and written contracts, including expenses for preparation, investigation, and defending the underlying actions, and in prosecuting this Complaint.
5. For costs of suit incurred herein, and
6. For such other and further relief as the Court may deem proper.

///
///
///
///
///
///
///
///

Dated: KELLER AND HECKMAN, LLP

By: ______________________
Christopher Van Gundy
Arthur S. Garrett III
William A. Gaar
Attorneys for Plaintiff
TOWNSEND FARMS, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff Townsend Farms, Inc. hereby demands a trial by jury as to all issues so triable as a matter of right.

Dated: KELLER AND HECKMAN, LLP

By: ______________________
Christopher Van Gundy
Arthur S. Garrett III
William A. Gaar
Attorneys for Plaintiff
TOWNSEND FARMS, INC.

4837-4423-8628, v. 1

# Exhibit A

EX 2



*********************
* PURCHASE ORDER *
*********************

PO #: 617561-00
Date: 09/21/12

Page #001

Bill To: TOWNSEND FARMS, INC.
23400 NE TOWNSEND WAY
FAIRVIEW, OREGON
FAX: (503)618-8257 97024
Phone: (503)666-1780

Order For:
Customer For:
Job # For:

Vendor: 0001578
PURELY POMEGRANATE, INC.
33971 SELVA ROAD
SUITE 240
DANA POINT, CA
92629
Phone: (949)489-3800
Fax #: 9494893810

Ship To: STOR-RITE FREEZER
215 N MILL RD
VINELAND, NEW JERSEY 08360
Phone: (856)696-0055

Resale:

Ship Instructions: FAX: (503)618-8257

| Due Date | Terms | Ship Via | FOB | Fill Policy | Reference | Our Cust # |
|---|---|---|---|---|---|---|
| 09/21/12 | NET 30 | VESSEL | SEE BELOW | NO BACKORDER | 72218 | |

| Ln# | Quantity | U/M | Stock # | Loc | Unit Cost | Extension |
|---|---|---|---|---|---|---|
| #1 | 19680 | CS | *643 | | 54.01000 | 1062916.80 |

22.046# IQF POMEGRANATE
ORGANIC
PRODUCT OF TURKEY

PACKER: GOKNUR

PRICE IS QUOTED FOB:
WEST COAST OR EAST COAST

CLEANUP DATE: 7/31/2013

PRODUCT TO SHIP DIRECTLY
FROM PORT WHEN POSSIBLE

PAYMENT TERMS: NET 30
$2.45/LB 433,865.28 LBS

***REVISED 12/13/2012***

Townsend Farms, Inc. must have your c[illegible] ...nd micros sent to nate@townsendfarms.com.
Product must be packed to Townsend Farms, Inc.'s specifications. Any deviation will be subject to Townsend Farms Inc.'s discretion of reworking the product at the supplier's expense.

Purchaser Signature Heidi Bitz Date 12-17-2012
Townsend Farms, Inc.

Seller Signature________________ Date________

Total Units: 19680.00 Total Weight: 433865 Total Extension: 1062916.80

Please contact Diosa at 503-512-1020 or Jeri at 503-512-1021 to schedule delivery appointments.

VENDOR BUYER INVENTORY FILE ACCOUNTS PAYABLE

**ADDITIONAL TERMS OF PURCHASE**

1. TERMS. This purchase order shall not be binding upon, and may be revoked by Purchase until acceptance thereby by Seller either by written acknowledgement actually received by Purchase or performance by Seller in accordance with the terms of the order. Acceptance of this offer is expressly limited to the terms and conditions hereof and no deviations shall be acceptable to Purchaser. In the event of inconsistency between the terms of this offer and any purported acceptance hereof by Seller, the terms of this order shall prevail. Any additional or different terms contained in Seller's acceptance are hereby objected to and rejected by Purchaser without any further notice of objection or rejection unless Purchaser assents to such additional or different terms. In writing Seller shall furnish Goods (as hereinafter defined) or services only in accordance with the terms and condition of both sides of this order and receipt or acceptance of Goods or services furnished in any other manner shall not be deemed consent by Purchaser to such deviation. (The word "Good as used herein shall mean the products, articles, services, and work, materials and equipment on the on the face hereof.)

2. PRICE / PAYMENT. This order must not, without written authorization from Purchaser, be filled at higher prices than last charged or quoted to Purchaser for Goods described herein. Seller agrees that any price reduction made in made in Goods described in this order prior to delivery of such. Goods to Purchaser will be applicable to this order. Seller certifies that the prices charged for the items or services covered by this order comply with all applicable laws and regulations. Payment shall be upon the terms stated on the face hereof, or if none, net 30 days after the date of delivery or after date of invoice, whichever is later.

3. QUALITY. All Goods delivered to and work done for Purchaser hereunder, shall be exactly as specified by purchaser and shall be subject to inspection and approval or rejection by Purchaser in whole or in part. Seller shall be responsible for and cure any defects in the Goods which are discovered within a commercially reasonable time, or to the extent the Goods compromise equipment, from the date such equipment is put into commercial operation.

4. SHIPPING. Unless expressly stated otherwise herein, all sales are F.O.B. destination. Seller agrees to pay all excess charges resulting from failure to ship and route by the least expensive way or as instructed by Purchaser, and to reimburse Purchaser for any such excess charges paid by Purchaser. No extra charges shall be made for packaging material unless authority is expressly incorporated in this order. Seller shall be responsible for safe packing which must conform to the requirements of the carrier's tariffs.

5. DELIVERIES, TIME. Purchaser reserves the right to cancel this order or any portion thereof if delivery is note made when and as specified. Time is the essence of this order. Shipment shall be delayed only with the written approval of Purchaser. In the event of unauthorized delay or other failure to make delivery according to the terms hereof, Purchaser shall be entitled to damages sustained by Purchaser from Seller's failure to make delivery as of the date specified.

6. FAILURE OF PERFORMANCE / DELAY. Failure on the part of the Seller to deliver, or non-conformity of all or any part of any Goods delivered pursuant to this order, or any breach of warranty, shall be a breach of the entire agreement, and Purchaser shall thereupon be entitled to recover all of its damages arising there from, including any consequential damages and attorney's fees. Waiver of any breach of default shall not affect Purchaser's remedies with regard to any subsequent breach or default. Neither Purchaser nor Seller shall be liable for delay in performance or failure to perform when such delay or failure is due to unforeseen causes beyond its control and without its fault or negligence including but not restricted to acts of God or the public enemy, government action, fires, floods, earthquakes, epidemics, quarantine restrictions, riots, insurrections, freight embargos, and box car shortages.

7. SERVICES. When this order requires any work or services to be preformed, Purchaser shall perform such work or services strictly as an independent contractor and not as an employee.

8. PATENTS. Seller warrants that no Goods covered by this order shall infringe any patent, trademark, trade name or copyright, and the neither the normally anticipated uses by Purchaser not any special methods of using same, known by Seller to be contemplated my Purchaser, shall infringe any patent trademark, trade name or copyright. Seller shall indemnify and defend Purchaser and its subsidiaries and affiliates again any loss, damage or expense (including attorney fees) resulting from or arising out of any claim of patent, trademark, trade name or copyright infringement or such litigation relating to the Goods covered by this order. Purchaser may retain its own counsel and participate in any such litigation for the further protection of Purchaser's interests.

9. WARRANTIES. Seller represents, guarantees, and warrants to Purchase that the Good and / or services covered by this order: (a) will be merchantable and free from defects and fit for the use for which they are intended and to which they are normally put for any special uses know by Seller to be contemplated by Purchaser; and (b) have been produced, manufactured or performed in compliance with the requirements of, and meet the standards of; all applicable Federal, State, and local laws, regulations and ordinances including, without limitation, Executive Order 11246, Section 202 (Equal Opportunity), the Occupational Safety and Health Act, the Interstate Commerce Act, the American National Standards Institute, the National Fire Protection Association, the Federal Food, Drug, and Cosmetic Act, The Federal Insecticide, Fungicide and Rodenticide Act, the Federal Hazardous Substances Labeling Act, the State Pure Food Acts, the Federal Trade Commission Act, the Federal Trade Commission Trade Practice Rules, the Fair Packaging and Labeling Act, the Poison Prevention Packaging Act, the Flammable Fabrics Act, the Consumer Product Safety Act of 1972, the Wool Products Labeling Act, the Fair Labor Standards Act of 1938, and the Civil Rights Act of 1964. The equal employment opportunity clauses in Section 202 of the Executive Order 11246, as amended, 38 U.S.C. 4212, Vietnam Veterans Readjustment Assistance Act of 1974, as amended, and Section 503 of the Rehabilitation Act of 1973, as amended, relative to equal employment opportunity and implementing rules and regulations of the Secretary of Labor are incorporated herein by specific reference.

10. INDEMNIFICATION. Seller shall protect, defend, indemnify and hold harmless Purchaser from and again any and all suits, claims, actions, governmental action debts, damages, costs, charges expenses, including all court costs and attorney fees resulting from or arising out of (a) failure of the Goods to conform to any warranty, express or implied, (b) injuries to persons or damage to in respect to the Goods or the performances of services hereunder by Seller, or (c) Seller's failure to comply with any Federal, State or other laws and regulations applying to the Goods purchased. The Seller's indemnification obligations hereunder shall apply even is any such liability, loss, or damage was cause in whole or in part by the negligence of purchaser or its employees, agents or independent contractors, except to the extent expressly prohibited by law. This indemnity shall survive acceptance of the Goods and payment by Purchaser.

11. CONFIDENTIALITY. Seller shall treat as confidential and shall not disclose any of the details connected with this order to any third party, expect as may be necessary for the proper execution of this order.

12. GOVERNING LAW. This purchase order and the acceptance of it shall be a contract made in the state shown in the Purchaser's address on the face of this purchase order and governed by the laws thereof.

13. EXISTING CONTRACT. If this order is placed under an existing contract between Seller and Purchaser any terms of this order which are inconsistent with such contract shall not be applicable.

14. MODIFICATION AND NONASSIGNMENT. This purchase order contains the complete agreement between Purchaser and Seller, and no agreement or other understanding purporting to modify the terms and conditions hereof shall be binding upon Purchaser unless otherwise agreed to by Purchaser in writing on or subsequent to the date of this order. Seller shall not delegate to any other person the performance of any work or supplying of any service hereunder, in whole or in part, without the prior written consent of Purchaser. If Seller assigns monies due and to become due under this order, Purchaser shall be entitled to asserts against the assignee thereof, all rights, claims, and defenses or every type (including, without limitation, right of set off, recoupment, and counterclaim), which Purchaser could assert again Seller, whether acquired prior or subsequent to such assignment.

Purely Pomegranate®

33971 Selva Road Suite 240
Dana Point, CA 92629

# Sales Order

| Date | S.O. No. |
|---|---|
| 9/21/2012 | 72218 |

| Name / Address | Ship To |
|---|---|
| TOWNSEND FARMS, INC.<br>23303 NE. SANDY<br>FAIRVIEW, OREGON 97024 | TOWNSEND FARMS, INC.<br>23303 NE. SANDY<br>FAIRVIEW, OR 97024 |

| P.O. No. | |
|---|---|
| TBD | |

| Item | Description | Ordered | U/M | Price | Amount |
|---|---|---|---|---|---|
| Org IQF Pomeg... | Organic IQF Pomegranate Arils - 10kg Cartons (1,640 Cartons per load)<br><br>Product of Turkey - Packer: Goknur<br><br>Total Volume - 12 Truckloads<br>Price is Quoted FOB: West Coast or East Coast<br><br>*** Product to ship directly from the port when possible.<br><br>West Coast Warehouse<br>Rancho Cold Storage<br>670 Mesquit Street<br>Los Angeles, CA 90021<br><br>East Coast Warehouse<br>Newark Refrigerated Waehouse<br>104 Avenue C<br>Newark, NJ 07114<br><br>Terms: Net 30<br>Contract Clean-up date: 7/31/2013 | 433,865.28 | lb | 2.65 | 1,149,742.99 |
| | | | | **Total** | $1,149,742.99 |